CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 22 2019

JULIA C. DUDLEY, CLERK
BY
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

RIKKIE LYN HOLLINS, )
)
    Plaintiff, ) Civil Action No. 7:18CV00017
)
v. ) **MEMORANDUM OPINION**
)
NANCY A. BERRYHILL, Acting ) By: Hon. Glen E. Conrad
Commissioner of Social Security, ) Senior United States District Judge
)
    Defendant. )

Plaintiff has filed this action challenging the final decision of the Commissioner of Social

Security denying plaintiff's claim for a period of disability and disability insurance benefits under

the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is

pursuant to 42 U.S.C. § 405(g). As reflected by the memoranda and argument submitted by the

parties, the issues now before the court are whether the Commissioner's final decision is supported

by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the

Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, Rikkie Lyn Hollins, was born on December 10, 1970. She did not graduate

from high school but eventually earned a GED. (Tr. 52). Ms. Hollins has previously worked on

a part-time basis at several restaurants. (Tr. 52, 295). However, the Law Judge determined that

the plaintiff's prior employment did not reach the level of substantial gainful activity or qualify as

past relevant work for purposes of her application for benefits.

Ms. Hollins applied for a period of disability and disability benefits on August 6, 2013. In

filing her current claim, plaintiff alleged that she became disabled for all forms of substantial

gainful employment on November 8, 2012, due to liver disease, hepatitis C, arthritis,

spondylolisthesis, depression, anxiety, nerve damage, and tendonitis. (Tr. 240, 284). At the time of an administrative hearing on May 10, 2016, the plaintiff amended her application so as to reflect an alleged disability onset date of November 11, 2013. (Tr. 51). Ms. Hollins now maintains that she has remained disabled to the present time. The record reveals that Ms. Hollins met the insured status requirements of the Act through the second quarter of 2014, but not thereafter. See generally 42 U.S.C. §§ 416(i) and 423(a). Consequently, the plaintiff is entitled to a period of disability and disability insurance benefits only if she has established that she became disabled for all forms of substantial gainful employment on or before June 30, 2014, her date last insured.

Ms. Hollins' application was denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated December 7, 2016, the Law Judge also determined, after applying the five-step sequential evaluation process, that Ms. Hollins is not disabled. See 20 C.F.R. § 404.1520.[1] The Law Judge found that Ms. Hollins suffered from several severe impairments through the date last insured, including right elbow epicondylitis, lumbar spine spondylolisthesis, carpal tunnel syndrome, peripheral neuropathy, major depressive disorder, generalized anxiety disorder, and panic disorder, but that these impairments did not, either individually or in combination, meet or medically equal the requirements of a listed impairment. (Tr. 21). The Law Judge then assessed Ms. Hollins' residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned
> finds that, through the date last insured, the claimant had the

---

[1] The process requires the Law Judge to consider, in sequence, whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and (5) if not, whether she can perform other work in the national economy. 20 C.F.R. § 404.1520. If a decision can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. Id.

residual functional capacity to perform light work as defined in 20 C.F.R. [§] 404.1567(b), except she could frequently perform stooping; occasionally perform stair climbing, kneeling, crouching, and crawling; and never climb ladders, ropes, or scaffolds. The claimant could frequently use hand controls, handle, and finger with the right upper extremity. She should avoid concentrated exposure to vibrations and industrial hazards. The claimant can understand, remember, and carry out simple instructions and perform simple tasks with occasional interaction with others. She can adapt to occasional changes in the customary workplace setting.

(Tr. 23–24). Given such a residual functional capacity, and after considering a vocational expert's responses to post-hearing interrogatories, the Law Judge determined that, through the date last insured, Ms. Hollins retained sufficient functional capacity to perform certain light work roles existing in significant number in the national economy. (Tr. 38). Accordingly, the Law Judge concluded that Ms. Hollins was not disabled at any time from the alleged onset date through the date last insured, and that she is not entitled to a period of disability or disability insurance benefits. See generally 20 C.F.R. § 404.1520(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Ms. Hollins has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159–60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

3

On appeal, Ms. Hollins raises several arguments, including that the Law Judge's residual functional capacity ("RFC") assessment and subsequent hypothetical posed to the vocational expert run afoul of the decision by the United States Court of Appeals for the Fourth Circuit in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). After reviewing the record and considering the parties' arguments, the court finds "good cause" to remand the case to the Commissioner for further development and consideration. See 42 U.S.C. § 405(g).

The medical record reveals that Ms. Hollins was diagnosed with and treated for several mental impairments prior to her date last insured. On September 13, 2013, Ms. Hollins presented to Dr. Guyton Register for an initial psychiatric evaluation. Dr. Register noted that plaintiff's past psychiatric history included "prior treatment with Celexa for depression and anxiety," and that her treatment for hepatitis C "would place her at a high risk for worsening of psych illness." (Tr. 624, 626). Dr. Register took plaintiff off of Celexa and added Effexor and Xanax to her treatment regimen. (Tr. 626–27). He also recommended that Ms. Hollins pursue "supportive psychotherapy focused on coping with chronic mental illness." (Tr. 626). Plaintiff saw Dr. Register on several occasions prior to her date last insured. Dr. Register ultimately diagnosed plaintiff with major depressive disorder, recurrent, moderate; panic disorder; and anxiety. (Tr. 633). He increased plaintiff's psychotropic medications in an effort to stabilize her anxiety and mood, and noted that plaintiff's "chronic medical issues . . . complicate [her] psychiatric treatment including obesity and fatigue." (Tr. 636, 732, 739).

Ms. Hollins was also treated for mental health issues at the Free Clinic of the New River Valley, where she was diagnosed with depression, posttraumatic stress disorder (PTSD), and panic disorder. (Tr. 839, 853, 862). A mental health assessment administered in July of 2014, less than a month after plaintiff's insured status expired, revealed that plaintiff "scored high on

4

depression, PTSD, Panic, and Generalized Anxiety." (Tr. 840). Examination notes from the Free Clinic also indicate that plaintiff struggled with intense anger toward her ex-husband and expressed homicidal ideation on several occasions. (Tr. 845, 859–62, 870).

The state agency psychologists, Dr. David Deaver and Dr. Richard Luck, completed two forms regarding plaintiff's mental health: a Psychiatric Review Technique form and a Mental Residual Functional Capacity Assessment form. On the first form, both psychologists noted that plaintiff has moderate difficulties in maintaining concentration, persistence or pace. (Tr. 102, 119). On the second form, both psychologists opined that Ms. Hollins has moderate limitations in the category of "sustained concentration and persistence." (Tr. 102, 124). More specifically, Dr. Deaver and Dr. Luck noted that Ms. Hollins' ability to maintain attention and concentration for extended periods is moderately limited, as is her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 106–07, 124). Consistent with the opinions offered by the state agency psychologists, the Law Judge found at step three of the sequential evaluation process that plaintiff's impairments result in "moderate difficulties" with "concentration, persistence, or pace." (Tr. 23).

In assessing plaintiff's residual functional capacity ("RFC"), the Law Judge indicated that he had given "some weight" to the mental assessments completed by the state agency psychologists. (Tr. 36). As relevant here, the Law Judge found that "the degree of restriction they assessed is well supported in terms of . . . maintaining concentration, persistence, or pace." (Tr. 36). Because Ms. Hollins "required continuous medication management and psychotherapy to treat her mental impairments," the Law Judge agreed that plaintiff was "moderately restricted" in this area of functioning through the date last insured. (Tr. 36) (internal quotation marks

omitted).  Nonetheless, the Law Judge did not expressly reference plaintiff's moderate limitations in concentration, persistence, or pace in the RFC assessment or the hypothetical question posed to the vocational expert.  Instead, the Law Judge indicated that Ms. Hollins can "carry out simple instructions and perform simple tasks with occasional interaction with others."  (Tr. 24).

In the court's view, the difficulty with the Law Judge's decision is two-fold.  First, the Law Judge failed to explain how the RFC assessment properly captured Ms. Hollins' moderate limitations in concentration, persistence, or pace.  In Mascio, the Fourth Circuit explained that "the ability to perform simple tasks differs from the ability to stay on task," and that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." 780 F.3d at 638.  Thus, limiting a claimant to simple tasks or unskilled work, without any further explanation, is insufficient under Mascio.  See id. ("Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity . . . .  But because the ALJ here gave no explanation, a remand is in order."); see also Perry v. Berryhill, No. 18-1076, 2019 U.S. App. LEXIS 6969, at *8 (4th Cir. Mar. 8, 2019) ("The missing explanation in this case is particularly important because it is undisputed that Perry's stroke left him with limitations in concentration, persistence, and pace.  And those limitations, as we have held, are not accounted for adequately by the portion of the ALJ's assessment that restricts Perry to 'unskilled work.'") (citing Mascio supra).

Although the Law Judge also found that Ms. Hollins could handle only "occasional changes in the customary workplace setting," the Law Judge did not suggest that this particular limitation was included to address plaintiff's moderate difficulties with concentration, persistence, or pace, much less explain how the limitation adequately accommodated plaintiff's deficiencies in

6

this area of functioning. See, e.g., Trena Y. v. Comm'r, Soc. Sec. Admin., No. 1:18-cv-00938, 2019 U.S. Dist. LEXIS 66851, at *8 (D. Md. Apr. 18, 2019) (remanding for "further analysis consistent with the Fourth Circuit's mandate in Mascio" where the Law Judge "did not claim [that other RFC limitations such as changes in the work setting and interaction with co-workers] were meant to address Plaintiff's persistence issues"); Trina B. v. Berryhill, No. 7:17-cv-00472, 2018 U.S. Dist. LEXIS 220325, at *10 (W.D. Va. Dec. 19, 2018), report and recommendation adopted, 2019 U.S. Dist. LEXIS 13655 (W.D. Va. Jan. 29, 2019) (remanding for further proceedings where the Law Judge failed to explain how a limitation to "low stress work" would accommodate the plaintiff's moderate difficulties with concentration, persistence, or pace). Indeed, the Law Judge said nothing about the plaintiff's mental capacity to perform job-related functions for a full workday, even though Dr. Deaver and Dr. Luck both opined that plaintiff's psychologically based symptoms would moderately limit her ability to complete a normal workday without interruptions and her ability to perform at a consistent pace without an unreasonable number of rest periods. Based on these deficiencies in the assessment of plaintiff's residual functional capacity, the court concludes that remand is required. See Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2019) (requiring remand where, among other deficiencies, "the ALJ drew no explicit conclusions about how [the claimant's] mental limitations affect her ability to perform job-related tasks for a full workday—a benchmark established by the Administration's own regulations.") (citations omitted).

For similar reasons, the court is also unable to conclude that the Law Judge presented a legally sufficient hypothetical to the vocational expert. While the Law Judge adopted the vocational expert's opinion that plaintiff can perform light, unskilled work as a night cleaner, mail clerk, or office helper, the vocational expert was not asked to consider the significance of moderate

7

limitations in concentration, persistence, or pace in the performance of such jobs. Nevertheless, the Law Judge relied on the opinion of the vocational expert in determining that there are jobs existing in significant numbers in the national economy which Ms. Hollins can perform.

In Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989), the Fourth Circuit commented as follows:

> The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments.

Id. at 50 (citations omitted).

In his opinion, the Law Judge did not offer any specific rationale for omitting moderate limitations in concentration, persistence, or pace from the hypothetical question propounded to the vocational expert. The court is unable to conclude that the hypothetical question posed by the Law Judge, which assumed that Ms. Hollins can perform simple tasks involving only occasional workplace changes and interaction with others, was sufficient to alert the vocational expert to the existence of moderate limitations in concentration, work persistence, or attendance to task. The court believes that consideration of such limitations would be important in assessing a claimant's capacity to perform the jobs identified by the vocational expert.

Moreover, the Fourth Circuit has specifically held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" Mascio, 780 F.3d at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1776, 1180 (11th Cir. 2011)). The court recognizes that Mascio does not stand for the proposition that moderate limitations in concentration, persistence, or pace

8

always translate into a limitation in a claimant's residual functional capacity. Rather, as indicated above, the decision underscores the Law Judge's duty to explain how his residual functional capacity findings adequately account for a claimant's work-related limitations. Because the Law Judge did not provide such explanation in the instant case, "a remand is in order." Id.; see also Thomas, 916 F.3d at 312.

For the reasons stated, the court finds "good cause" to remand this case to the Commissioner for further development and consideration.[2] If the Commissioner is unable to decide the case in plaintiff's favor on the basis of the existing record, the Commissioner will conduct a supplemental administrative hearing at which both sides will be allowed to present additional evidence and argument. An appropriate order of remand will be entered this day.

The Clerk is directed to send certified copies of this memorandum opinion to all counsel of record.

DATED: This $\overset{\Delta}{2\text{-}3}$ day of May, 2019.

_____

Senior United States District Judge

---

[2] In light of the court's decision to remand the case to the Commissioner, the court declines to address Ms. Hollins' remaining claims of error.

9